UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GINA ROSE ARWOOD,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:25-cv-357-JEM |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 14].

Now before the Court is Plaintiff's Brief [Doc. 17]. Gina Rose Arwood ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge, the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the undersigned **DENIES** Plaintiff's request to remand [**Doc. 17**] and **AFFIRMS** the Commissioner.

**I. PROCEDURAL HISTORY**

On December 13, 2022, Plaintiff filed for Social Security Income benefits under Title XVI of the Social Security Act [Tr. 232–38]. Plaintiff claimed a period of disability that began on November 14, 2022 [*Id.* at 232]. After her claim was denied initially [*id.* at 139–43] and upon reconsideration [*id.* at 150–53], Plaintiff requested a hearing before an ALJ [*id.* at 184]. A hearing was held on June 12, 2024, before ALJ Laurie Bedell (hereinafter "ALJ Bedell" or "the ALJ") [*Id.* at 30–56]. On March July 3, 2024, the ALJ found Plaintiff not disabled [*Id.* at 11–29]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 7–10]. The

Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 17, 22, and 23].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past

relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since November 14, 2022, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: obesity, diabetes mellitus II, obstructive sleep apnea, thoracic spondylosis, left thumb arthritis, and major depressive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in

20 CFR 416.967(b) except no climbing ladders, ropes, or scaffolding; occasional climbing of ramps or stairs; and must avoid concentrated exposure to extreme cold, vibration, pulmonary irritants such as fumes, odors, dusts, gases, poor ventilation, etc., and hazards such as machinery, heights, etc. She can engage in frequent handling and fingering with the left upper extremity. The claimant is able to understand, remember and carry out simple as well as detailed instructions and tasks, but not multi-step, or complex ones. She is limited to occasional social interactions with coworkers and supervisors, but no work requiring general public interaction; and able to adapt to occasional workplace changes.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on April 17, 1983 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 14, 2022, the date the application was filed (20 CFR 416.920(g)).

[Tr. 17–24].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's

findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. ANALYSIS

Plaintiff claims the ALJ committed two errors [Doc. 17 p. 9]. First, she contends that the ALJ failed to properly assess the consistency of her subjective statements under 20 C.F.R. § 416.929 [*Id.*]. Second, she argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to sufficiently account for her obesity in the RFC finding [*Id.*].

For the reasons below, the undersigned finds the ALJ did not commit reversible error.

### A. Plaintiff's Subjective Statements

Plaintiff states that the ALJ ignored her hearing testimony "with a single exception" [*Id.* at 12]. According to Plaintiff, the ALJ made one reference to her hearing testimony, which

was incomplete and it misrepresented her actual testimony [*Id.* at 12–13]. Plaintiff argues, "By ignoring the remainder of [her] testimony—and by cutting off her quotation mid-sentence, thereby creating an obviously false impression—the ALJ violated the 'anti-cherry-picking' precedents" [*Id.* at 13 (emphasis and citations omitted)].

"Beyond this misrepresentation," Plaintiff claims "the ALJ's failure to actually assess the consistency of Plaintiff's hearing testimony also demands remand" [*Id.* (citation omitted)]. In addition, Plaintiff submits that "the ALJ did not identify any inconsistency between Plaintiff's statements and the rest of the record, in violation of SSR 16-3p" [*Id.* at 14]. Instead, Plaintiff asserts that the ALJ relied on boilerplate language and "offered a selective reading of Plaintiff's function reports, confining her analysis to the paragraph-B discussion at step three" [*Id.* (citation omitted)]. She further states that "even when discussing Plaintiff's function reports, the ALJ did not articulate any kind of consistency analysis" [*Id.*]. "To be clear," Plaintiff submits, "the ALJ was under no duty to accept the accuracy of Plaintiff's function reports or hearing testimony[,]" but "because she chose to cite the function reports in support of her paragraph-B findings, the ALJ was required to explain why the function reports were more worthy of analysis than Plaintiff's hearing testimony" [*Id.* at 15 (emphasis omitted)]. She contends, "The ALJ's failure to even discuss Plaintiff's testimony means that the written decision never explored any substantive differences between that testimony and the function reports" [*Id.*]. Plaintiff concludes, "There is no evidence within the written decision to support a finding that the ALJ met the articulation standard with respect to Plaintiff's subjective statements, most particularly her sworn hearing testimony" [*Id.* at 16].

Defendant responds, "Contrary to Plaintiff's argument, the ALJ reasonably determined that Plaintiff's subjective complaints were not entirely consistent with the record as a whole, including

Plaintiff's often normal physical and mental examinations, imaging studies showing fairly benign findings, Plaintiff's improvement with treatment, Plaintiff's daily activities, and the prior administrative medical findings from the state medical consultants with respect to Plaintiff's hearing testimony" [Doc. 22 p. 3 (citation omitted)]. According to Defendant, "The ALJ then thoroughly discussed the evidence of record, and that discussion reveals the ALJ's reasoning for discrediting Plaintiff's subjective statements" [*Id.* at 4 (citations omitted)]. Defendant submits, "The ALJ also considered the prior administrative medical findings from the state medical consultants" [*Id.* at 8]. "In sum," Defendant claims, "the ALJ reasonably concluded that Plaintiff's subjective statements about her symptoms were not entirely consistent with the evidence as a whole" [*Id.*]. And while Plaintiff claims that the ALJ ignored Plaintiff's testimony, Defendant asserts that "it is well established that the ALJ is 'not required to explain every piece of evidence in the record'" [*Id.* at 10 (citation omitted)]. Defendant states, "[T]his principle applies to claimant's testimony" [*Id.*]. Further, Defendant asserts that the ALJ acknowledged her subjective complaints, which Plaintiff testified to during the hearing [*Id.* at 11 (citations omitted)]. And while Plaintiff "faults the ALJ for inaccurately summarizing her testimony about why she could not sustain work[,]" Defendant claims, "there is no indication that the ALJ held Plaintiff's statement against her or that it influenced any of her findings" [*Id.*]. With respect to Plaintiff's argument that the ALJ was required to explain why the function reports were worth more analysis as opposed to the hearing testimony, Defendant states that "argument is flawed for multiple reasons" [*Id.*].

Plaintiff replies that "the ALJ's opportunity to not only hear, but to question the claimant are unique factor[s] []that only serve to underline the degree to which the ALJ in the instant case failed to use her opportunities at the hearing[] and later failed to explain how Plaintiff's testimony supported and/or weakened her SSI claim" [Doc. 23 p. 4]. Although Defendant argues that the

ALJ explained her decision, Plaintiff submits the explanations "do not exist in the ALJ's written decision" [*Id.*]. She contends that "the ALJ must show her work, such that the Court can meaningfully assess its 'reasonableness'" [*Id.* at 5]. In addition, Plaintiff asserts that Defendant offers rationale for the decision that the ALJ did not reference [*Id.* at 5–6]. She claims that "the ALJ's discussion of Plaintiff's function reports did not obviate the ALJ's duty to also consider and articulate her assessment of Plaintiff's hearing testimony" [*Id.* at 6 (citation omitted)]. "In an effort to demonstrate the alleged reasonableness of the ALJ's decision," Plaintiff argues, "Defendant actually reveals that the ALJ characterized some of the record evidence as if she was a medical expert instead of an administrative factfinder" [*Id.* at 7]. According to Plaintiff, "The ALJ's apparent comfort with drawing her own medical conclusions runs afoul of Sixth Circuit and other precedent" [*Id.*].

The ALJ must "consider all [the claimant's] statements about [her] symptoms, such as pain, and any description [the] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [the] ability to work" 20 C.F.R. § 416.929(a). These statements, however, "will not alone establish" disability. *Id.* Instead, "[t]here must be objective medical evidence from an acceptable medical source that shows [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled." *Id.* The ALJ "will then determine the extent to which [the] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other

evidence to decide how [the] symptoms affect [the] ability to work." *Id.* The ALJ must consider (1) "daily activities" (2) "location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;" (3) "[p]recipitating and aggravating factors;" (4) "[t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the] pain or other symptoms;" (5) "[t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the] pain or other symptoms;" (6) "[a]ny measures . . . used to relieve [the] pain or other symptoms . . . ;" (7) "[o]ther factors concerning [the claimant's] functional limitations or restrictions due to pain or other symptoms." 20 C.F.R. § 416.929(c); *see also* SSR 16-3p, 2017 WL 5180304, at *2 (explaining that ALJs "must consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms").

Plaintiff outlines her testimony at the hearing [*see* Doc. 17 pp. 11–12] and argues that the ALJ erred because she ignored it [*id.* at 12–13]. But the "ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) ("[I]t is well settled that: [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (second alteration in original) (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))). Plaintiff asserts that the one time the ALJ referenced her testimony, the ALJ misrepresented it. Specifically, the ALJ stated, "At the hearing, when asked why she believed she could not sustain work, the [Plaintiff] answered 'because I don't want to work'" [Tr. 20]. Although

Plaintiff actually testified, "Because I don't want to work because I don't feel good. My health, my physical health is what's keeping me" [*id.* at 47], the Court does not find the ALJ's representation requires a remand because the ALJ made consistency findings and supported those findings pursuant to the regulations as discussed below. *See Dial v. Kijakazi*, No. 1:23-CV-00071, 2024 WL 2060259, at *11 (M.D. Tenn. May 6, 2024) (finding the ALJ's decision was supported by substantial evidence "[a]lthough the ALJ mischaracterized some of Plaintiff's hearing testimony"), *report and recommendation adopted sub nom. Dial v. Soc. Sec. Admin.*, No. 1:23-CV-00071, 2024 WL 2959298 (M.D. Tenn. June 12, 2024).

Plaintiff claims that the ALJ's statement demonstrates she engaged in cherry-picking. While the United States Court of Appeals for the Sixth Circuit has recognized that an ALJ may not cherry-pick facts to support a finding of non-disability and ignore evidence that supports a finding of disability, *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014), the ALJ did not do so here. Instead, contrary to Plaintiff's argument, the ALJ specifically made consistency findings pursuant to 20 C.F.R. § 416.929 and SSR 16-3p [Tr. 20]. She stated, "After careful consideration of the evidence, the [ALJ] finds that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent" [Tr. 19].[1]

[1] Plaintiff refers to this language as "boilerplate" and states that it has "been found to reflect an incorrect standard" [Doc. 17 p. 14 (citing *Mogdis v. Comm'r of Soc. Sec.*, No. 1:18-CV-82, 2019 WL 652571, at *4 (W.D. Mich. Feb. 14, 2019); *Deville v. Comm'r of Soc. Sec.*, No. 1:23-CV-578, 2024 WL 4249128, at *6 (W.D. Mich. Sept. 20, 2024))]. But "the Sixth Circuit has regularly affirmed decisions where the ALJ used the exact language that was used in both *Mogdis* and in this case." *Kim W. v. Comm'r of Soc. Sec.*, No. 2:24-CV-12648, 2025 WL 3118954, at *10 (E.D. Mich. Oct. 3, 2025) (citations omitted).

As Defendant notes, "the ALJ discussed that the objective evidence generally revealed normal findings or only mild abnormalities" [Doc. 22 p. 5 (citing Tr. 20 and C.F.R. § 416.929(c) (stating that an ALJ must consider objective evidence)]. For example, the ALJ noted that Plaintiff reported back and hip pain, but the imaging had "been relatively equivocal" [Tr. 20].[2] While the ALJ stated that Plaintiff showed mild back tenderness at an examination, she also showed no swelling, normal range of motion, normal strength, normal sensation, normal motor function, and normal coordination [*Id.* at 21 (citation omitted)]. The ALJ further noted that Plaintiff "claimed of a burning sensation in her feet and hand numbness that are possibility associated with diabetes; however, there are no EMG or nerve condition studies that document neuropathy" [*Id.* (citation omitted)]. *See also* 20 C.F.R § 416.929(c)(2) (stating that "[o]bjective medical evidence . . ., such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work").

The ALJ also detailed Plaintiff's mental health treatment [Tr. 20–21]. "Plaintiff consistently had normal speech, age-appropriate fund of knowledge, adequate memory, intact attention and concentration, coherent associations, normal thought content, logical thought process, and good insight/judgment" [Doc. 22 p. 6 (citations omitted)]. In addition, "Plaintiff often

---

[2] Plaintiff contends that because the ALJ characterized Plaintiff's imaging as "relatively equivocal[,]" she acted as "a medical expert instead of an administrative factfinder" [Doc. 23 p. 7]. Plaintiff claims the ALJ's characterization "runs afoul of Sixth Circuit and other precedent" [*Id.*]. Plaintiff, however, did not raise this argument in her opening brief [*See* Doc. 17]. "Generally speaking, arguments raised for the first time in reply briefs are waived[.]" *Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (citations omitted). Even so, the Court finds the ALJ did not rely on her own interpretation of the evidence. Following the ALJ's statement, the ALJ detailed Plaintiff's imaging.

had a cooperative demeanor, normal behavior, and appropriate mood/affect" [*Id.* (citations omitted)].

The ALJ also noted that some of Plaintiff's physical and mental conditions were improved with treatment [Tr. 20–22]. For instance, the ALJ noted that the addition of medicine caused Plaintiff to have a more stable mood and she experienced less crying and that her anxiety and depression were well managed with medication [*Id.* at 20–21]. The ALJ further observed that Plaintiff reported "significant relief from the steroid injunction" [*Id.* at 21 (citation omitted)]. *See* 20 C.F.R. § 416.929(c)(3)(iv) (stating that the ALJ must consider medication to alleviate symptoms). She also considered Plaintiff's daily activities [Tr. 18]. The ALJ noted that Plaintiff attended church and spent time with others [*Id.*]. *See* 20 C.F.R. § 416.929(c)(3)(i) (stating that the ALJ must consider the claimant's daily activities).

Plaintiff asserts, "the ALJ's failure to consider and assess the credibility of Plaintiff's testimony undermines his decision and deprives this Court of its ability to conduct meaningful judicial review" [Doc. 17 p. 13 (quoting *Mader v. Astrue*, No. 3:10CV00263, 2012 WL 1440360, at *4 (S.D. Ohio Apr. 26, 2012), *report and recommendation adopted*, No. 3:10CV00263, 2012 WL 1758694 (S.D. Ohio May 16, 2012))]. Defendant notes, however, "the ALJ specifically acknowledged Plaintiff's subjective complaints of back pain, hip pain, difficulty sitting, and difficulty walking, which formed the basis of much of her hearing testimony" [Doc. 22 p. 11 (citations omitted); *see also* Doc. 17 pp. 7–8 (outlining Plaintiff's testimony)]. In addition, "[t]he ALJ also noted Plaintiff's complaints of neuropathy in her feet and tingling in her hands, which Plaintiff also testified about at the hearing" [Doc. 22 p. 11 (citations omitted)]. "And the ALJ discussed Plaintiff's subjective statements about her mental limitations from her function reports" [*Id.* (citations omitted)].

Plaintiff argues that the "ALJ merely offered a selective reading of Plaintiff's function reports, confining her analysis to the paragraph-B discussion at step three[,]" "the ALJ did not articulate any kind of consistency analysis[,]" and that "the ALJ was required to explain why the function reports were more worthy of analysis than Plaintiff's hearing testimony" [Doc. 17 pp. 15–14]. But as Defendant notes, "Plaintiff cites no authority that an ALJ must explain why he or she discussed or credited particular statements over any other evidence" [Doc. 22 pp. 11–12]. *See Rocky W. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00124, 2023 WL 4116606, at *9 (S.D. Ohio June 22, 2023) ("There is no requirement that an ALJ specifically analyze each and every symptom and complaint. Indeed, courts have rejected [p]laintiff's assertion." (collecting cases)).

Moreover, "the ALJ relied on the functional reports to show that she attended church and socialized with others in person, on the phone, via text and email, and through video chat" [Doc. 22 p. 12]. Plaintiff does not argue that her testimony differed [*Id.*]. And although Plaintiff claims that the ALJ did not explore any substantive differences between the function reports and her testimony, "the ALJ is not required to reconcile every piece of evidence in the record, so long as his or her opinion is supported by substantial evidence." *Bigelow v. Comm'r of Soc. Sec.*, No. 2:14-CV-14416, 2016 WL 625408, at *8 (E.D. Mich. Jan. 5, 2016), *report and recommendation adopted*, No. 14-14416, 2016 WL 612730 (E.D. Mich. Feb. 16, 2016).

"[T]he Sixth Circuit has held that an ALJ's credibility determination is 'essentially unchallengeable' and must be affirmed so long as the findings are 'reasonable and supported by substantial evidence.'" *Dial*, 2024 WL 2060259, at *9 (quoting *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016)). The Court finds so here. *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference"

to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").[3]

**B. Plaintiff's Obesity**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to sufficiently account for the impact of Plaintiff's extreme obesity in the RFC finding [Doc. 17 p. 9]. According to Plaintiff, "Per SSR 19-2p, an ALJ does 'an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe'" [*Id.* at 18 (emphasis omitted)]. She contends that "even though [her] obesity was by itself quite extreme, the ALJ failed to properly assess its functional relevance, including how it combined with Plaintiff's other severe impairments to further limit her work capacity" [*Id.*]. "As a result," Plaintiff argues, "the ALJ's decision is unsupported by substantial evidence and requires remand" [*Id.*]. Plaintiff acknowledges that the ALJ noted, "Plaintiff had 'a body mass index in the 50s, which has limited her treatment options[,]'" but she argues, "the ALJ did not provide context or specify Plaintiff's degree of obesity—never referring to 'morbid' or 'class III' designations in any way—and never discussed her obesity specifically in relation to her other impairments" [*Id.* (emphasis and footnote omitted)]. "On the contrary," Plaintiff argues, "the ALJ's discussion of Plaintiff's obesity was dominated by boilerplate description of what the analysis should include, without actually providing anywhere close to the kind of 'individualized

[3] Defendant discusses certain facts that the ALJ did not discuss [*See* Doc. 22 p. 7 n.1]. Plaintiff replies that Defendant "may not avoid the articulation requirement by speculating as to the ALJ's reasoning after the fact" [Doc. 17 p. 18]. The Court, however, has not relied on such facts, and therefore, it need not consider these arguments.

assessment' mandated by SSR 19-2p" [*Id.* at 19–20 (emphasis omitted)]. Plaintiff calls the ALJ's obesity analysis "extremely limited and impermissibly vague" [*Id.* at 20].

Defendant responds that "the ALJ evaluated Plaintiff's obesity in accordance with the agency's regulations/rulings and Sixth Circuit case law" [Doc. 22 p. 12]. "Indeed," Defendant argues, "the ALJ included numerous restrictions that accounted for Plaintiff's obesity, including limiting Plaintiff to light work with various postural and environmental limitations" [*Id.* at 13 (citation omitted)]. Although Plaintiff "contends that the ALJ had to make express findings about how obesity did or did not affect each functional ability[,]" Defendant asserts, "SSR 19-2p does not mandate such an undertaking or any other particular mode of analyzing obesity" [*Id.* at 14 (citations omitted)]. In addition, Defendant contends, "Plaintiff's argument is merely an attempt to impermissibly shift her burden to the ALJ" [*Id.*].

Plaintiff replies that "[Defendant] points to no substantive discussion of the functional impact of Plaintiff's obesity anywhere in the ALJ's decision" [Doc. 23 p. 8]. She claims that Defendant has mischaracterized her argument in her opening brief and that she does not contend that the ALJ must provide a "granular [level of] detail" [*Id.* at 10]. Instead, Plaintiff claims "one should be able to read an ALJ's decision and come away with a clear idea of the evidentiary bases on which she decided the case" [*Id.*].

SSR 19-2p provides guidance on how the Social Security Administration establishes whether a person has a medically determinable impairment of obesity and how obesity is evaluated in social security disability claims. 2019 WL 2374244, at *1. The ALJ "must consider the limiting effects of obesity when assessing a person's RFC." *Id.* at *5 (footnote omitted). "As with any other impairment," the ALJ must "explain how [she] reached [her] conclusion on whether obesity causes any limitations." *Id.*

The ALJ found that Plaintiff's obesity was a severe impairment [Tr. 17], explicitly referenced SSR 19-2p [*id.* at 22], and noted that she "considered the effects of the claimant's obesity in [the] [RFC] assessment" [*id.*]. Plaintiff argues that the ALJ was required to give some articulation for her decision [Doc. 23 p. 10]. But the Court finds that the ALJ did so here. Specifically, the ALJ stated:

> In November 2022, the claimant had a height of five feet and five inches and weighed 337 pounds In October 2023, she weighed 330 pounds SSR 19-2p recognizes that obesity can cause limitation of function. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. The undersigned has considered the effects of the claimant's obesity in this residual functional capacity assessment. An assessment has been made to consider whether obesity has an effect on the claimant's ability to perform routine movement and necessary physical activity within the work environment.

[Tr. 22 (citations omitted)]. Although Plaintiff claims the ALJ's language contains no analysis, the ALJ then explained that she found "the prior administrative findings of Drs. Misra and Gilmore . . . partially persuasive" [*Id.*]. These physicians opined that Plaintiff could perform light work, but the ALJ found greater limitations in certain areas [*Id.*].

Plaintiff notes that the ALJ's finding that she "was unlimited in her capacity to balance, kneel, stoop, crouch, or crawl" is "[b]eyond . . . commonsense" and "conclusory" [Doc. 23 pp. 7–8 (emphasis and citations omitted)]. But the ALJ stated that Plaintiff's recent physical examinations showed normal straight leg raise tests, no leg weakness, antalgic gait, and normal reflexes" [Tr. 22 (citation omitted)]. Moreover, the ALJ found Dr. Gilmore's conclusion that Plaintiff could perform light work with no climbing ladders, ropes, and scaffolds partially

persuasive, and Dr. Gilmore specifically considered Plaintiff's obesity [Tr. 94–95]. *See Coldiron v. Comm'r of Soc. Sec*., 391 F. App'x 435, 443 (6th Cir. 2010) ("Given the ALJ's discussion of [the plaintiff's] obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered [the plaintiff's] obesity, we find that the ALJ adequately accounted for the effect that obesity has on [the plaintiff's] ability to perform sedentary work."); *Koivula v. Comm'r of Soc. Sec.*, No. 1:23-CV-01345, 2024 WL 3088056, at *14–15 (N.D. Ohio May 30, 2024) (finding that the ALJ adequately considered the claimant's obesity when the ALJ determined that the claimant's obesity was severe, acknowledged her obligations under SSR 19-2p, and relied, in part, upon the findings from a medical consultant who considered the claimant's obesity), *report and recommendation adopted sub nom. Koivula v. O'Malley*, No. 1:23CV1345, 2024 WL 3091127 (N.D. Ohio June 21, 2024).

Further, it is the plaintiff's burden to show "specifically how [her] obesity, in combination with other impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC determination." *Foss v. Comm'r of Soc. Sec.*, No. 1:16CV1907, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017) (alterations in original) (quoting *Wagner v. Commissioner*, No. 1:15CV0558, 2016 WL 2585797, at *6 (W.D. Mich. May 5, 2016)), *report and recommendation adopted*, No. 1:16CV1907, 2017 WL 2908857 (N.D. Ohio July 7, 2017). Other than arguing that common sense supports additional restrictions,[4] Plaintiff does not sufficiently articulate how her obesity supports a different RFC. *See Leon J. v. Comm'r of Soc. Sec.*, No. 24-CV-1264, 2025 WL 2643190, at *6 (W.D. Tenn. Sept. 15, 2025) ("Plaintiff has not made

[4] As Defendant points out, "The ALJ did not include any limitations in balancing, kneeling, stooping, crouching, crawling[,]" but "two of the jobs that the ALJ relied upon at step five required no such movements" [Doc. 22 p. 8 n.3 (citations omitted)]. "There were over 400,000 of those jobs" [*Id.* (citation omitted)].

any argument about how his obesity in combination with other symptoms limited his ability more than the ALJ's RFC determination.").[5]

The Court finds that the ALJ did not commit reversible error.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's request to remand [**Doc. 17**] and **AFFIRMS** the Commissioner.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge

[5] Plaintiff questions why "the RFC restrict[]s Plaintiff from extreme cold[] but not heat" [Doc. 17 pp. 20–21]. But as Defendant notes, "[N]one of the jobs that the ALJ relied upon at step five involve exposure to extreme cold or heat" [Doc. 22 p. 14 n.6 (citations omitted)].